In re the **MARRIAGE OF Marlene E. BARBER, Appellee,**

and

**Allen Barber, Appellant.**

No. 89CA1065.

Colorado Court of Appeals, Div. III.

April 25, 1991.

No appearance for appellee.

Susan J. Dycus Denver, for appellant.

Opinion by Judge MARQUEZ.

At issue in this domestic relations case is the authority of a state district court to determine the dischargeability of attorney fees and child support obligations in federal bankruptcy proceedings. Allen Barber, husband, appeals the trial court's judgment finding him in contempt of court and revoking the suspension of a sentence based on his nonpayment of child support and attorney fee arrearages. He contends that the trial court erred in finding that the attorney fees were not dischargeable under his Chapter 7 bankruptcy petition, and he contends that he was denied due process. We perceive no error in the trial court's rulings concerning the bankruptcy discharge, but we reverse the contempt judgment on other grounds.

The contempt judgment before this court is the culmination of an ongoing enforcement effort by husband's former wife, Marlene Barber, and her attorney, involving three separate contempt citations, five separate contempt judgments, and thirteen hearings over the course of two years. None of the prior contempt judgments was appealed by the husband.

The marriage of the parties was dissolved in January 1987. The permanent orders granted the wife custody of the parties' three minor children and ordered husband to pay $532 monthly child support. Husband was also ordered to pay a portion of the wife's attorney fees, amounting to $1,000, plus $1,148 in arrearages for child support and medical expenses incurred by the children prior to the entry of permanent orders.

Husband was found in contempt of court for nonpayment of child support and attorney fees as required by the dissolution decree on five separate occasions: October 13 and December 15, 1987; October 19 and December 19, 1988; and May 17, 1989; and was ordered to pay an additional $1,406.50 for attorney fees and costs incurred by wife in the contempt actions.

At a review hearing on October 19, 1988, at which husband appeared *pro se,* he advised the court that he had filed for bankruptcy and asserted that the attorney fees previously ordered by the court were dischargeable. The trial court disagreed with husband, stating that since the attorney fees were related to support needs and the enforcement of support needs, they were not dischargeable. At a second review hearing in November, the trial court advised husband that unless he provided the court with an order from bankruptcy court discharging the attorney fees, the court would utilize its contempt power to enforce compliance with its attorney fee orders. The trial court continued the hearing until December 1988 to permit husband to obtain the discharge order.

At the review hearing on December 19, 1988, husband appeared with his bankruptcy attorney. He advised the court that he had not obtained a discharge order from bankruptcy court as instructed by the trial court. Thereafter, following an evidentia-

ry hearing, the trial court ruled that the attorney fees previously awarded to the wife were not dischargeable under the husband's Chapter 7 bankruptcy petition. The court found husband in contempt for failing to pay the fees and for failing to stay current on his monthly child support obligation. It then sentenced husband to 120 days in jail, 90 days of which were to be served on a work-release basis. The court advised husband that he could purge the contempt by making full payment of all amounts owing for attorney fees and child support arrearages.

Husband did not appeal the December 19, 1988, judgment. The record shows that husband served four days of the sentence and was then granted a forty-five day stay of execution upon his payment of $800 into the court registry. Thereafter, at a review hearing on May 17, 1989, the trial court found that husband was in arrears on both attorney fees and monthly child support. The court once again found husband to be in contempt and ordered that he serve the remainder of the 120–day sentence imposed in December 1988. A stay of execution was granted pending this appeal.

I.

The husband's challenge to the May 17, 1989, judgment of contempt, to which this appeal is directed, is based on a collateral attack of the four previous contempt judgments, particularly the December 19, 1988, judgment, which included the sentence that the court executed in its May 17, 1989, order.

■ Failure to perfect an appeal from a final, appealable order deprives an appellate court of jurisdiction and precludes a review of the merits. See C.A.R. 4(a); In re Estate of Anderson, 727 P.2d 867 (Colo. App.1986). Therefore, because husband failed to appeal the four prior judgments of contempt, that portion of husband's appeal relating to the prior judgments is dismissed for lack of jurisdiction. Those judgments became final after the period in which to perfect an appeal expired and all issues litigated and decided by the prior judgments are res judicata. See Cavanaugh

v. State, 644 P.2d 1 (Colo.1982). Accordingly, we do not address husband's contentions regarding alleged error in the prior proceedings, except that portion of the order of December 19, 1988, as set forth in part II of this opinion.

II.

■ Husband contends that the trial court erred in its December 19, 1988, order in determining that the attorney fees were not dischargeable in husband's Chapter 7 bankruptcy petition.

■ Because the question of subject matter jurisdiction may be noticed at any stage of the proceeding, including appeal, we address this issue. See People v. Lockhart, 699 P.2d 1332 (Colo.1985). We conclude that the district court acted within its jurisdiction in determining that the attorney fees were not dischargeable.

Initially, we note that husband does not contend, nor does the record reflect, that the December 19, 1988, order violated the automatic stay provisions of 11 U.S.C. § 362(a) (1988).

■ The automatic stay does not apply to "the collection of alimony, maintenance, or support from property that is not *property of the estate.*" 11 U.S.C. 362(b)(2) (1988) (emphasis added). Assets and income acquired after the filing of the bankruptcy petition are not considered "property of the estate" in a Chapter 7 bankruptcy. See In re Weidenhammer, 82 B.R. 383 (Bankr.E.D.Penn.1988). Therefore, the automatic stay does not prohibit the enforcement of alimony, maintenance, or support obligations against the post-petition assets and income of the debtor in a Chapter 7 case. See also In re Renzulli, 28 B.R. 41 (Bankr.N.D.Ill.1982).

■ While a bankruptcy court has exclusive jurisdiction to grant relief from the automatic stay, there is *concurrent* jurisdiction in a bankruptcy court and a state domestic relations court to determine the dischargeability under 11 U.S.C. § 523(a)(5) (1988) of domestic debts alleged to be in the nature of support. See In re Grimshaw,

57 B.R. 181 (Bankr.N.D.Okla.1986); *see also* 3 *Collier on Bankruptcy* § 523.15[6] at 523–114–115 (L. King 15th ed. 1990).

■ Further, if the issue of dischargeability was actually litigated and necessarily decided in one forum, the parties may be collaterally estopped from relitigating the issue in another forum. *See Goss v. Goss,* 722 F.2d 599 (10th Cir.1983). *See generally Section 523(a)(5): The Exception From Discharge of Alimony, Maintenance and Support Obligations,* 4 Bankr. Dev.J. 109 (1987).

■ Section 523(a)(5) of the Bankruptcy Reform Act of 1978 prohibits the discharge of a debtor's obligation for domestic obligations that are "actually in the nature of" alimony, maintenance, or support payments. Whether a domestic obligation constitutes alimony, maintenance, or support under § 523(a)(5) is a question of federal bankruptcy law, not state law. Hence, in determining dischargeability, federal courts are not bound by state domestic law, nor are they bound to accept a divorce decree's characterization of a particular debt as a support obligation or as part of a property settlement. *In re Harrell,* 754 F.2d 902 (11th Cir.1985). Rather, the dispositive consideration is whether the obligation serves a support function. *In re Williams,* 703 F.2d 1055 (8th Cir.1983).

■ Payments in the nature of support may include obligations for which the debtor has agreed to hold the former spouse harmless, and payments on such debts need not be made directly to the spouse or dependent to be nondischargeable under § 523(a)(5). *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983). Accordingly, if an award of attorney fees is in the nature of support for the dependent spouse, the attorney fees are not dischargeable under § 523(a)(5). *In re Lathouwers,* 54 B.R. 205 (Bankr.D.Colo.1985); *In re Williams, supra.*

■ Here, the district court expressly relied upon *In re Lathouwers, supra,* in determining that the attorney fees were not dischargeable. Because the court acted within its jurisdiction and husband did

not appeal the ruling, the court's December 19, 1988, ruling is binding and not subject to review on the merits.

### III.

Husband contends that he was denied procedural due process and that the contempt judgment was fatally defective. We address his contentions only in regard to the May 17, 1989, order, and hold that any error in prior proceedings was waived by husband's failure to file a timely appeal. *See Cavanaugh v. State, supra.*

### A.

■ We reject husband's contention that he was denied proper notice and hearing.

■ The procedural provisions of C.R. C.P. 107(c) are not exclusive. There is no fixed procedural formula for contempt proceedings. *In re Marriage of Peper,* 38 Colo.App. 177, 554 P.2d 727 (1976). Due process is satisfied if, as here, a contemnor has actual notice of the court order with which he must comply, notice of the purpose of the contempt hearing, and is afforded an opportunity to be heard. *See In re Marriage of Zebedee,* 778 P.2d 694 (Colo. App.1988).

Following the contempt order of December 19, 1988, the husband personally appeared at review hearings conducted by the trial court in March and April 1989. At both hearings, the court advised husband that he was still in contempt of court and that he faced a return to jail if the contempt was not purged. At the May 1989 hearing, husband acknowledged that he had paid no child support for the months of April or May and that he had made no payments on the past child support and attorney fee arrearages. Husband further stated that he was aware of his legal right to seek a modified child support obligation, but stated that he was unwilling to seek a reduced obligation. The trial court thereupon revoked the suspension of husband's contempt sentence imposed in December 1988.

We are satisfied that husband had ample notice of the December 1988 contempt order, the terms and conditions of the stay of execution, the April 1989 order, and of the May 1989 review hearing. As he was provided notice and an opportunity to be heard, he was not denied due process. *See In re Marriage of Bernardoni*, 731 P.2d 146 (Colo.App.1986).

## B.

Husband contends that the trial court failed to make sufficient findings of fact to justify revocation of the suspension of the previously imposed contempt sentence. We agree.

If, as here, a trial court has imposed a remedial order of contempt, the court must make two findings of the contemnor's present duty and ability to comply with the underlying court order: one which supports the finding of contempt and a second which justifies the imposition of the remedial sanction. *In re Marriage of Hartt*, 43 Colo.App. 335, 603 P.2d 970 (1979); *see also In re Marriage of Zebedee, supra.*

Here, as in *Hartt, supra*, the trial court found that husband was capable of performing the court's order and was thus guilty of contempt, but it failed to determine whether husband had resources with which to purge himself of contempt at the time of imposition of sentence. Accordingly, the contempt judgment cannot stand, and the cause must be remanded for further proceedings and findings. *See Marshall v. Marshall*, 191 Colo. 165, 551 P.2d 709 (1976).

## C.

Husband contends that the trial court failed to determine whether he was entitled to court-appointed counsel to represent him. We agree this was error.

If a jail sentence may be imposed in a contempt proceeding, the alleged contemnor, if indigent, is entitled to the appointment of counsel. *Padilla v. Padilla*, 645 P.2d 1327 (Colo.App.1982).

Here, we note that husband was represented by counsel at the December 19, 1988, hearing, at which he was found in contempt. However, he appeared *pro se* at the May 17, 1989, hearing at which the court ordered that he serve the balance of his suspended sentence. Also, the record reflects that husband advised the court that he was unable to retain legal counsel.

In *In re Marriage of Wyatt*, 728 P.2d 734 (Colo.App.1986), we held that even if one accused of being in contempt is not fully indigent, a trial court must nevertheless determine if such person is "partially indigent," thereby qualifying him or her for court-appointed counsel. Accordingly, on remand, the trial court must follow the procedure set forth in *Wyatt* for determining husband's eligibility for court-appointed counsel.

## D.

Finally, relying on *People v. Razatos*, 699 P.2d 970 (Colo.1985), husband contends that he is entitled to invoke the constitutional privilege against self-incrimination. We disagree.

In recognizing the right to assert the privilege against self-incrimination, the court in *Razatos* expressly limited its holding to the *punitive* sanction of imprisonment, stating: "Only if Razatos clearly faced no possible imprisonment, *save for remedial sanctions compelling him to perform*, would the privilege be unavailable." As long as the contempt sanction here is remedial, not punitive, the holding in *Razatos* has no application.

Accordingly, the judgment of May 18, 1989, is reversed, and the cause is remanded for further proceedings to determine husband's qualification for court-appointed counsel and to determine whether husband has the present ability to comply with the underlying court orders.

TURSI and REED, JJ., concur.