24CA1147 Stansbury v Colorado Natural 05-29-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1147
Jefferson County District Court No. 23CV91
Honorable Christopher C. Zenisek, Judge

---

Dean Stansbury and James Stansbury,

Plaintiffs-Appellants,

v.

Colorado Natural Gas, Inc.,

Defendant-Appellee.

---

APPEAL DISMISSED IN PART
AND JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE JOHNSON
Lipinsky and Hawthorne*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 29, 2025

---

Dean Stansbury, Pro Se

James Stansbury, Pro Se

Overturf McGath & Hull, P.C., Steven W. Boatright, Sarah A. Thomas, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1     Plaintiffs, Dean Stansbury and James Stansbury (collectively the Stansburys),[1] appeal the district court's order granting summary judgment in favor of defendant, Colorado Natural Gas, Inc. (Colorado Natural). The Stansburys also appeal the court's alternative grounds for dismissing their negligence claim — as a sanction under C.R.C.P. 37 for their "flagrant disregard" of their discovery obligations. The Stansburys contend that the district court erred by (1) concluding there were no genuine issues of material fact concerning their negligence claim; (2) dismissing their negligence claim under Rule 37; (3) exhibiting bias against them; (4) failing to provide a complete record on appeal; and (5) awarding Colorado Natural its costs.

¶ 2     We affirm the district court's grant of summary judgment in favor of Colorado Natural. Because of our disposition, we need not address the court's dismissal of the Stansburys' negligence claim under Rule 37. We decline to address both the Stansburys' incomplete record claim, because they failed to comply with C.A.R.

---

[1] We later refer to Dean Stansbury by his first name for clarity because the Stansburys share the same last name. We intend no disrespect by doing so.

10, and their undeveloped judicial bias claim. And we dismiss for lack of jurisdiction the Stansburys' appeal of the court's cost award to Colorado Natural. We therefore dismiss the appeal in part but otherwise affirm the judgment.

## I. Background

¶ 3      On November 15, 2022, Dean called Colorado Natural's customer service number to request an inspection of potentially hazardous fence pillars at a neighbor's property and to request a callback from a technician. On December 1, 2022, Colorado Natural's district manager, Joe Berry (Berry), informed Dean that the pillars were safely positioned.

¶ 4      Later that day, Dean called Colorado Natural to report a natural gas odor near the gas meter at the Stansburys' property in Conifer. Colorado Natural requested that Dean meet the technicians at the property to show them the location of the odor. During the call, Dean instructed Colorado Natural that its employees were not permitted to enter the property beyond the "no trespassing" sign. Dean was not home at the time he made the call or when Colorado Natural came to the home.

¶ 5     The Stansburys alleged that they later discovered Colorado Natural employees entered their property to shut off the gas valve and locked the gas meter.  They claim that, because they were not notified in advance that the gas supply would be shut off, a pipe froze and burst, resulting in a flood causing substantial property damage.  But Colorado Natural's position was that Berry contacted the Stansburys on the afternoon of December 1 to inform them that their service had been temporarily discontinued and instructed him on the process for restoring service once he returned to the property.

¶ 6     In April 2023, the Stansburys filed this lawsuit against Colorado Natural, asserting trespass, negligence, breach of contract, and breach of the duty of good faith and fair dealing claims.  They alleged that Colorado Natural had no cause to disconnect any gas service or to lock their gas meter.  The Stansburys further alleged that the flooding caused over $1.5 million in damage to their property, including the cost to repair their real property and to replace personal items and scientific equipment.  Because of the damage to their property, they also alleged that they incurred moving and temporary housing expenses.

¶ 7    Colorado Natural moved to dismiss the Stansburys' claims. The district court granted the motion except as to the negligence claim. The court reasoned that the Stansburys asserted plausible allegations that Colorado Natural breached a duty it owed to the Stansburys by failing to notify them of the gas shutoff.

¶ 8    After Colorado Natural made numerous attempts to obtain discovery from the Stansburys, including through a C.R.C.P. 34(a)(2) request for inspection of the allegedly damaged property and repeated demands for documentation of damages, Colorado Natural sought summary judgment. In the motion, Colorado Natural argued that the Stansburys failed to produce evidence that (1) Colorado Natural breached a duty by failing to give the Stansburys notice of the interrupted natural gas service; (2) Colorado Natural caused, through an act or omission, the Stansburys' pipe to freeze and burst, resulting in damage to the Stansburys' property; and (3) the Stansburys were entitled to damages.

¶ 9    After briefing, the district court granted summary judgment in favor of Colorado Natural. It held that, even if Colorado Natural was not entitled to summary judgment, it would dismiss the

4

Stansburys' negligence claim as a sanction under C.R.C.P. 37 because of their failure to provide discovery as the court had ordered.

## II.     Summary Judgment

¶ 10     We conclude that the district court did not err by granting summary judgment in favor of Colorado Natural.

### A.     Standard of Review and Applicable Law

¶ 11     We review de novo a district court's grant of summary judgment.  *P.W. v. Child.'s Hosp. Colo.*, 2016 CO 6, ¶ 11.

¶ 12     In considering whether summary judgment is appropriate, a court grants the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts and resolves all doubts against the moving party.  *Dep't of Revenue v. Agilent Techs., Inc.*, 2019 CO 41, ¶ 15.

¶ 13     Summary judgment is a drastic remedy and, therefore, is only appropriate upon a showing that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  C.R.C.P. 56(c); *Sanchez v. Moosburger*, 187 P.3d 1185, 1187 (Colo. App. 2008).  A fact is material if it will affect the outcome of the case, and an issue is genuine if the evidence

presented demonstrates "that a reasonable jury could return a verdict for the non-moving party." *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo. 2007).

¶ 14    "The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party." *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 15 (citing *Civ. Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo. 1991)). "The opposing party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *Id.* at ¶ 12 (citing *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002)).

## B.    The District Court's Order

¶ 15    The district court concluded that the Stansburys had not established genuine issues of material fact on three of the four negligence elements.

¶ 16    To prevail on a negligence claim, the plaintiff must prove (1) the existence of a legal duty of the defendant to the plaintiff; (2) breach of that duty; (3) injury and damages to the plaintiff; and

(4) a sufficient causal connection between the defendant's breach and the plaintiff's damages. *Leaf v. Beihoffer*, 2014 COA 117, ¶ 12.

¶ 17　　The court first concluded that the Stansburys failed to prove that Colorado Natural breached a duty to them because Colorado Natural notified Dean that it was shutting off the gas to the Stansburys' property in response to Dean's odor complaint.

¶ 18　　Colorado Natural provided an affidavit from Berry, who attested that Dean called Colorado Natural to report the smell of natural gas emitting from the Stansburys' property. Berry said in the affidavit that he and another technician went to the property and turned off the gas. Berry spoke with Dean later that same afternoon and provided him with instructions for how to request restoration of his gas service. Colorado Natural also provided a telephone recording between Dean and Colorado Natural's technician Chris Farrier (Farrier) that took place on December 1. Dean can be heard on the telephone call expressing anger that Colorado Natural "trespassed" on "his property" to turn off the gas and threatening to sue and file a criminal complaint.

¶ 19　　The court also determined that there was no genuine issue of material fact as to causation. The Stansburys had argued that

genuine issues of material fact existed because the accountholder at the property, Donna Boreck (Boreck), had not been provided with notice that the gas would be shut off. But the district court rejected this argument, reasoning that Boreck was not a party to the action.

¶ 20 And the court reasoned that, despite the minimal photographs and estimated amounts the Stansburys submitted as part of the summary judgment briefing to prove their damages, they had not produced any evidence that Colorado Natural's action of turning off the gas was the proximate cause of the burst pipe or that a flood had even occurred on the property.

¶ 21 Finally, the court determined that the Stansburys' "self-created list of [damaged] personal property and scientific equipment," as well as their estimate of the cost of repairing the items, which they based on the cost of "items by similar listing on websites such as Ebay.com," was insufficient to establish a genuine issue of material fact on their alleged damages. The court also concluded that the Stansburys failed to designate "a qualified expert witness who could testify to the repairs needed [to the property] and the approximate costs of such repairs."

¶ 22    Despite the court's summary judgment order, the Stansburys argue that (1) Dean was qualified to serve as an expert to prove the Stansburys' damages; (2) Colorado Natural's affidavits from Berry and Farrier had little to no evidentiary value; and (3) the Stansburys' version of how events unfolded on December 1 materially differed from Colorado Natural's representation.

## C.    Analysis

¶ 23    For four reasons, we conclude the district court did not err by granting summary judgment to Colorado Natural on the Stansburys' negligence claim.

¶ 24    First, even assuming — as the district court did — that Colorado Natural owed a duty of care to the Stansburys, the Stansburys failed to produce any evidence establishing that Colorado Natural breached that duty.  The Stansburys contend that they established the existence of genuine issues of material fact as to a breach because (1) Colorado Natural fabricated a reason to trespass on their property; (2) Colorado Natural did not provide them notice that the gas would be shut off; and (3) Farrier's affidavit, in which he said he had notified Dean of the gas shutoff, was inadmissible hearsay.

¶ 25    Colorado Natural does not dispute that it turned off the gas to the Stansburys' property on December 1, 2022.  For this reason, the Stansburys' picture depicting a locked gas meter as part of the summary judgment briefing does not prove the breach element of their negligence claim.

¶ 26    The record shows that Colorado Natural fulfilled its obligation to maintain customer safety by responding to the natural gas concern, which Dean himself reported, by temporarily disconnecting the Stansburys' gas.  The Public Utilities Commission, which regulates utility companies like Colorado Natural, has promulgated regulations that authorize such entities to discontinue natural gas service due to safety concerns.  Dep't of Regul. Agencies Rule 4407(a)(V), 4 Code Colo. Regs. 723-4.

¶ 27    The district court relied on the Berry and Farrier affidavits, in which those witnesses asserted that Colorado Natural had informed Dean about the gas being shut off and that Dean had confirmed such notice.  Specifically, the court noted that Colorado Natural submitted a recording of a call between Farrier and Dean in which Dean discussed how angry he was that the gas supply had been shut off after he had complained about the gas odor emanating

from his neighbor's property. Thus, the court determined that the Stansburys did not provide evidence to rebut the fact that they had notice on December 1, 2022, that the gas supply to the property was being shut off in response to Dean's odor complaint.

¶ 28    And while the Stansburys' challenge to Colorado Natural's affidavits as "inadmissible hearsay" may be a proper objection to oppose summary judgment, *see People v. Hernandez & Assocs., Inc.,* 736 P.2d 1238, 1240 (Colo. App. 1986) ("[A]ffidavits based upon inadmissible hearsay are insufficient to support summary judgment."), it was the Stansburys, not Colorado Natural, who relied on inadmissible hearsay. Under C.R.C.P. 56(e), an affidavit submitted in support of or in opposition to a summary judgment motion must be "made on [the affiant's] personal knowledge." Berry and Farrier attested that the statements in their affidavits were based on their personal knowledge and the Stansburys do not dispute the affidavits in this regard. Regardless, the telephone call recording — the accuracy of which the Stansburys do not dispute — includes Dean's identification of himself. Therefore, Dean's statements are nonhearsay, as they are statements of a party opponent admissible under CRE 801(d)(2)(A).

¶ 29    Farrier's statements from the call would likely be admissible under CRE 106, as Dean's statements would only make sense if the entire call — or at least portions of what Farrier said to Dean — was also admitted.  *See People v. Montoya*, 2024 CO 20, ¶ 48 ("[W]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." (quoting CRE 106)).  And although the recording of the call between Farrier and Dean is not dated, Farrier attests in his affidavit that the metadata for the recording shows it was created on December 1, 2022.  The Stansburys submitted no evidence contradicting that the telephone call took place on that date.

¶ 30    While the Stansburys challenged Colorado Natural's affidavits, they did not submit an affidavit from Boreck supporting their claim that she did not receive advance notice of the gas being shut off.  Boreck's statements may be inadmissible hearsay.  Regardless, the Stansburys failed to rebut that Dean did not know about the gas being shut off on December 1 in response to Dean's recorded statements during his call with Farrier.  *See People in Interest of*

12

*S.N. v. S.N.*, 2014 CO 64, ¶ 17 ("[R]eliance upon allegations or denials in the pleadings will not suffice when faced with an affidavit affirmatively showing the absence of a triable issue of material fact." (quoting *Ginter v. Palmer & Co.*, 585 P.2d 583, 585 (Colo. 1978))); *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 858 (Colo. App. 2007) (holding that "[m]ere conclusory statements are not sufficient to raise genuine factual issues" in opposition to a motion for summary judgment).

¶ 31    Second, the Stansburys failed to demonstrate that Colorado Natural's disruption to their gas service was the actual and proximate cause of the alleged flood and resulting damage to the Stansburys' real and personal property. We agree with the district court that to prove causation, a plaintiff must show that, but for the alleged negligence, the harm would not have occurred. *Reigel v. SavaSeniorCare L.L.C.*, 292 P.3d 977, 985 (Colo. App. 2011). The requirement of but-for causation is satisfied "if the negligent conduct in a 'natural and continued sequence, unbroken by any efficient, intervening cause, produce[s] the result complained of, and without which that result would not have occurred.'" *Smith v. State Comp. Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)

(quoting *Stout v. Denver Park & Amusement Co.*, 287 P. 650, 650 (Colo. 1930)); *see also Groh v. Westin Operator, LLC*, 2013 COA 39, ¶ 50 (causation may be found where the negligent actor "sets in motion a course of events" that leads to the plaintiff's injury), *aff'd*, 2015 CO 25.

¶ 32    The Stansburys argue that a causal connection exists between Colorado Natural's actions and their alleged injuries because their pipe would not have frozen and burst and, thus, there would not have been a flood that caused property damage had Colorado Natural not cut off the gas supply to the property. In support of this argument, they point to a timeline of events they submitted to the court. But they failed to authenticate the information in that timeline. In fact, as the district court noted, there is no proof in the record that a flood even occurred at the property.

¶ 33    In support of their assertion that there is a genuine issue of material fact as to causation, the Stansburys argue that "any homeowner should know" that an "expert witness is not necessary to establish causation as it is *common knowledge* that water will freeze and burst copper waterline during winter if there is no natural gas supply to the heating source." (Emphasis added.) This

conclusory statement, however, does nothing to advance their position.

¶ 34    A finding of negligence does not impose liability on a defendant unless the negligence proximately caused the plaintiff's alleged injury.  *See Vititoe v. Rocky Mountain Pavement Maint., Inc.*, 2015 COA 82, ¶ 37.  While some confusion persists in the terminology used to explain principles of causation, *see Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, ¶ 27, for the purpose of our decision, we need not look beyond some well-established rules.

¶ 35    For instance, the district court ordered the Stansburys to allow Colorado Natural access to the property for an inspection, but the Stansburys failed to cooperate with defense counsel on scheduling the inspection.  Under C.R.C.P. 34(a)(2), a party can inspect the plaintiff's alleged property damage by serving a request "[t]o permit entry upon designated land . . . in the possession or control of the party upon whom the request is served."  Although email exchanges between Dean and defense counsel indicated the Stansburys would permit the court-ordered inspection of their property, the record reflects that the inspection never occurred.

¶ 36    As the district court noted, the Stansburys made Colorado Natural's inspection of the property extremely difficult by demanding that Colorado Natural's inspectors sign nondisclosure agreements and pass security background checks before they could access the property. The Stansburys also claimed that the property was completely inaccessible for months at a time due to snowpack, the presence of high voltage equipment, or their own personal scheduling conflicts. And they failed to designate an expert for many months, only identifying Dean as their expert on damages after the discovery cutoff had passed. One example of the Stansburys' intransience is an email that Dean sent to Adrian Castro (Castro), Colorado Natural's original defense counsel, indicating, "You are incorrect in assuming that . . . I am required to grant you access to damaged property . . . . You as a hostile entity have no technical standing in damaged materials, therefor [sic] you are not invited to be present" at any inspection.

¶ 37    We conclude that the district court did not abuse its discretion by determining that Dean was not properly designated as an expert. Besides the belated disclosure beyond the discovery deadline, the district court reasoned that the disclosure did not include the

information that must be provided under C.R.C.P. 26(a)(2)(B)(II). For example, while the Stansburys submitted Dean's curriculum vitae, they failed to provide any documentation regarding his expertise or an explanation of the topics on which they anticipated he would testify. Thus, the district court properly determined that the Stansburys' disclosure of Dean as an expert was noncompliant with the requirements of C.R.C.P. 26(a)(2)(B)(II). *See Sovde v. Scott*, 2017 COA 90, ¶ 34 (holding that the district court did not abuse its discretion when it denied the plaintiff's request to call certain expert witnesses whom the plaintiff had not disclosed before the expert endorsement deadline).

¶ 38 Third, despite the Stansburys' position that they adequately demonstrated the cost to replace the scientific equipment and other personal property damaged during the alleged flooding, as well as the cost to repair the damage to the real property, the record shows otherwise. As initial proof of the amount of their damages, they offered a worksheet they created that listed twenty categories of items with corresponding repair or replacement cost estimates. But they provided this worksheet without supporting documentation, such as invoices from contractors or receipts to evidence purchase

of replacement items or equipment and materials for the repairs needed. Instead, the Stansburys insisted they would provide the relevant documentation at a future date, but they never did so.

¶ 39 The record reflects that defense counsel repeatedly sought to obtain supporting documentation for the Stansburys' claim that they incurred $1.5 million in damages — such as invoices, manuals, appraisals, repair estimates, photos, and receipts — at several points during the pretrial proceedings. For example, on October 20, 2023, the Stansburys emailed a narrative and timeline to Castro, but they provided nothing else to substantiate their alleged damage figure. In the email, the Stansburys stated that they would be producing a "Damage Claims Report" and photographs the following week.

¶ 40 Then, on October 30, 2023, the Stansburys filed a supplemental disclosure, but once again, other than an estimate from a contracting company, they failed to disclose any documents substantiating whether they had moved forward with the estimate or paid the contractors for the cost of the damaged items listed.

¶ 41 The Stansburys' supplemental disclosure also indicated that the "Damage Claims Report" and photographs would be disclosed

by November 9, 2023.  But on November 10, the Stansburys left Castro a voicemail indicating that the digital photographs had been corrupted.  In response, Castro emailed the Stansburys stating, "Your voice mail indicates the digital photographs cannot be produced because they are corrupted.  Do you still have the camera or memory stick?  If so, we can see if they can be recovered by a forensic expert."  The email continued, "If not, do you have any invoices or other supporting documentation for the purchase of these items, and the damage caused to them."  From November 11 to November 16, 2023, Castro communicated further with the Stansburys, but the Stansburys did not supplement their disclosures and declared that they had satisfied their discovery obligations.  In fact, the Stansburys communicated that they did not "see the need" for a conference with the court to address the disclosure issues.

¶ 42     Besides the estimate from the contractor, before the court entered summary judgment, the Stansburys never provided defense counsel or the district court with any documentation evidencing the extent of the damage to their real and personal property, corroborating evidence of the cost to repair the damage to the real

property or to repair or replace the damaged personal property, or receipts or invoices supporting payments they made. *See Gibbons v. Ludlow*, 2013 CO 49, ¶ 2 (affirming that the plaintiff's failure to present evidence of the fact of damages, beyond mere possibility or speculation, justified the district court's grant of summary judgment); *see also Terrones v. Tapia*, 967 P.2d 216, 218-19 (Colo. App. 1998) (holding that summary judgment is appropriate when the nonmoving party has not identified expert witnesses or designated documents that support a basis for computing damages claims).

¶ 43    A final reason for rejecting the Stansburys' damages argument is that they provided belated — and insufficient — documentation in support of their damage claim. The Stansburys contend that the court erred by failing to take into consideration the photographic evidence supporting their claim of damages they submitted on June 12, 13, and 24, 2024. But they submitted this evidence *after* the court granted summary judgment to Colorado Natural on May 20, 2024.

¶ 44    Courts do not abuse their discretion if they decline to set aside a summary judgment ruling when the "[n]ewly discovered evidence"

under C.R.C.P. 59(d)(4) could have been discovered by the exercise of reasonable diligence before the briefing on the summary judgment motion concluded and when the evidence would not have affected the district court's ruling. *See McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶¶ 86-87; *Dubois v. Myers*, 684 P.2d 940, 943 (Colo. App. 1984). The Stansburys do not provide any argument below or on appeal as to how the belatedly produced photographs showing the purported damage to the property could constitute "[n]ewly discovered evidence" that would entitle them to relief under C.R.C.P. 59(d)(4). Even assuming it was newly discovered evidence, the Stansburys also failed to show how the photographs would have changed the district court's finding that Colorado Natural did not breach any duty owed to the Stansburys and did not proximately cause any damage to the Stansburys' property.

¶ 45 And in this case, the district court had no discretion to review the belatedly submitted evidence because the Stansburys filed their notice of appeal in this court on June 27, 2024; thus, as of that date, the district court lost jurisdiction over any issue relating to the merits of the Stansburys' negligence claim. C.A.R. 3(a); *see*

21

*Ditirro v. Sando*, 2022 COA 94, ¶ 27 (The filing of a notice of appeal generally "shifts jurisdiction to the appellate court, thus divesting the [district] court of jurisdiction to conduct further substantive action related to the judgment on appeal." (quoting *Musick v. Woznicki*, 136 P.3d 244, 246 (Colo. 2006))); *see also Musick*, 136 P.3d at 248 ("[O]nce an appeal is perfected[,] jurisdiction over the case is transferred from the [district] court to the appellate court for all essential purposes with regard to the substantive issues that are the subject of the appeal." (quoting *Molitor v. Anderson*, 795 P.2d 266, 268 (Colo. 1990))).

¶ 46 Therefore, we conclude that, because no genuine issue of material fact exists as to the elements of breach, causation, and damages for the Stansburys' negligence claim, the district court properly granted summary judgment in favor of Colorado Natural.

## III. Remaining Contentions

¶ 47 Of the Stansburys' remaining claims, we decline to address both their incomplete record claim, because they failed to comply with C.A.R. 10, and their undeveloped judicial bias claim, because they waived the claim, failed to preserve the issue, and presented underdeveloped arguments. And we dismiss the Stansburys'

appeal of the court's cost award to Colorado Natural because we lack jurisdiction over it.

## A.  Incomplete Record

¶ 48    The Stansburys contend that the district court erred by failing to provide a complete record on appeal.  Specifically, they assert that the appellate record is missing court filings from April 2023 to June 2023, as well as a thumb drive containing electronic files that the Stansburys claim they submitted to the court on May 2, 2024.

¶ 49    "It is the appellant's job to ensure that the reviewing court has an adequate record."  *Knoll v. Allstate Fire & Cas. Ins.*, 216 P.3d 615, 617 (Colo. App. 2009).  C.A.R. 10(f) lays out a process that a party must undertake to reconstruct a missing record.

¶ 50    The Stansburys did not attempt to reconstruct the record under C.A.R. 10, as they were required to do if they believed the record was incomplete.  Nor did they seek to supplement the record.  Thus, to the extent the Stansburys contend information is missing from the record, it was their obligation "to take all steps necessary under the appellate rules to obtain the necessary record for review."  *Halliburton v. Pub. Serv. Co. of Colo.*, 804 P.2d 213, 217 (Colo. App. 1990).  Accordingly, because they failed to comply with C.A.R. 10,

23

we decline to address the Stansburys' contention of missing records further. And because the Stansburys did not attempt to reconstruct the record with the documents from the thumb drive, we must presume that the record supports the district court's grant of summary judgment to Colorado Natural. *See In re Marriage of McSoud*, 131 P.3d 1208, 1211 (Colo. App. 2006) ("[I]f a party fails to attempt to reconstruct the record as required by" C.A.R. 10, "that party may not thereafter complain that the record is inadequate."). The record is sufficient to establish that the district court did not err by granting summary judgment to Colorado Natural.

## B. Judicial Bias

¶ 51 The Stansburys argue that the district court judge exhibited bias against them because he (1) continually issued rulings adverse to them and (2) failed to accommodate them under the "American Disability Act."

¶ 52 The Stansburys do not delineate whether their judicial bias claim is based on actual bias or on an appearance of impropriety. Litigants can waive a claim of judicial bias based on an appearance of impropriety, while a claim of actual bias cannot be waived. *People v. Jennings*, 2021 COA 112, ¶¶ 19, 21, 26.

¶ 53    Where a party alleges the appearance of impropriety, a judicial officer must be disqualified "in any proceeding in which the judge's impartiality[] might reasonably be questioned."  Code of Judicial Conduct 2.11(A).  But a litigant's failure to file a motion under C.R.C.P. 97 seeking recusal of a judge due to an appearance of impropriety may constitute a waiver of such argument.  *Richardson v. People*, 2020 CO 46, ¶ 33.

¶ 54    The Stansburys did not seek to disqualify the district court judge under Rule 97.  Thus, we decline to address this claim further given their failure to preserve it.  *See In re Marriage of Zebedee*, 778 P.2d 694, 699 (Colo. App. 1988) (declining to address unpreserved allegations of judicial bias).

¶ 55    Actual bias "exists when, in all probability, a judge will be unable to deal fairly with a party; it focuses on the judge's subjective motivations."  *People in Interest of A.P.*, 2022 CO 24, ¶ 28.  Actual bias must be established clearly in the record, as mere speculative statements and conclusions are insufficient.  *People v. Drake*, 748 P.2d 1237, 1249 (Colo. 1988).

¶ 56    As we understand the Stansburys' contention, they view the district court judge as biased against them because of his rulings.

25

But a judge's adverse rulings, without more, do not establish actual bias. *See Bocian v. Owners Ins. Co.*, 2020 COA 98, ¶ 57 ("Unless accompanied by an attitude of hostility or ill will toward a party, a ruling by a judge on a legal issue is insufficient to show bias that requires disqualification." (citing *Brewster v. Dist. Ct.*, 811 P.2d 812, 814 (Colo. 1991))); *see also Saucerman v. Saucerman*, 461 P.2d 18, 22 (Colo. 1969) (holding that "rulings of a judge," even if "erroneous, numerous and continuous, are not sufficient in themselves to show bias or prejudice").

¶ 57    To the extent the Stansburys contend the district court judge exhibited actual bias, their claim is conclusory and underdeveloped. And even assuming the Stansburys' contention of actual bias is based on more than adverse rulings, such as their underdeveloped argument that the court failed to accommodate them under the Americans with Disabilities Act, any such arguments are bare assertions or speculative. Therefore, we decline to address this argument further. *See In re Marriage of Zebedee*, 778 P.2d at 699.

## C.    Costs Award

¶ 58    The Stansburys contend that the district court erred by awarding Colorado Natural $7,443.35 in litigation costs. They

26

assert that the district court erred in numerous ways, many of which are duplicative, so we categorize their arguments as follows: (1) Colorado Natural failed to provide sufficient information to support their request for costs; (2) Colorado Natural sought unreasonable amounts of costs; and (3) Colorado Natural's fees were, in part, duplicative of others.

¶ 59    We conclude that we lack jurisdiction over the court's cost award to Colorado Natural.  Therefore, we dismiss this portion of the Stansburys' appeal.

¶ 60    We must independently determine whether we have jurisdiction over an appeal.  *In re Estate of Gonzalez*, 2024 COA 63, ¶ 12.  Subject to certain exceptions not applicable here, we only have jurisdiction to review final judgments and orders. § 13-4-102(1), C.R.S. 2024; *see also* C.A.R. 1(a).

¶ 61    "[A]n award of attorney fees is distinct and separately appealable from the judgment on the merits."  *Stone Grp. Holdings LLC v. Ellison*, 2024 COA 10, ¶ 31 (quoting *Kennedy v. Gillam Dev. Corp.*, 80 P.3d 927, 929 (Colo. App. 2003)).  This remains true whether the award is denominated as attorney fees or costs.  *L.H.M. Corp., TCD v. Martinez*, 2021 CO 78, ¶¶ 25-28.

¶ 62     The Stansburys filed their notice of appeal on June 24, 2024. It appears they filed a duplicate notice of appeal on July 18, 2024. The court did not grant Colorado Natural's request for costs until August 20, 2024.

¶ 63     An award of costs is not a final appealable order until the court has reduced the amount to a sum certain. *See Stone Grp. Holdings*, ¶ 26 (holding that a damages award is not final for purposes of appeal until the amount of prejudgment interest is reduced to a sum certain). At the time the Stansburys filed their notices of appeal, the district court had not yet reduced Colorado Natural's award of costs to a sum certain. To the extent the Stansburys contend that their notices of appeal included the appeal of costs, we would lack jurisdiction because the district court had not yet ruled and, therefore, we lacked a final appealable order. And because they did not file an amended notice of appeal within forty-nine days of the court's August 24, 2024 cost order, we lack jurisdiction because they did not timely appeal. *Id.* at ¶ 16; *see also* C.A.R. 4(a)(1). Therefore, we dismiss this portion of their appeal.

## IV. Conclusion

¶ 64     We dismiss the appeal in part but otherwise affirm the judgment.

JUDGE LIPINSKY and JUDGE HAWTHORNE concur.